EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mildred Vélez Cortés, et al.<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Baxter Healthcare Corp. of Puerto Rico, et al.<br><br>Demandados-Recurridos | Certiorari<br><br>2005 TSPR 184<br><br>166 DPR ____ |

Número del Caso: CC-2003-964

Fecha: 6 de diciembre de 2005

Tribunal de Apelaciones:

        Circuito Regional Carolina – Fajardo

Juez Ponente:

        Hon. José Miranda De Hostos

Abogados de la Parte Peticionaria:

        Lcdo. Charles S. Hey Maestre
        Lcdo. Luis Amauri Suárez Zayas

Abogados de la Parte Recurrida:

        Lcdo. Carlos A. Padilla Vélez
        Lcdo. Pedro J. Manzano Yates
        Lcdo. José A. Silva Cofresi
        Lcdo. José R. Negrón Fernández

Materia: Daños y Perjuicios; Despido Injustificado; Discrimen por Razón de Edad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mildred Vélez Cortés, *et al.*

   Demandantes-Peticionarios

        v.

                                    CC-2003-964

Baxter Healthcare Corp. of
Puerto Rico, *et al.*

   Demandados-Recurridos


RESOLUCION


San Juan, Puerto Rico, a 6 de diciembre de 2005.

    Atendida la Segunda Moción de Reconsideración presentada por la parte recurrida, se provee no ha lugar. Aténgase a lo resuelto.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite una Opinión disidente a la cual se une el Juez Presidente señor Hernández Denton. El Juez Asociado señor Rivera Pérez emite un Voto particular.



                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mildred Vélez Cortés, *et al.*

  Demandantes-Peticionarios

       v.

Baxter Healthcare Corp. of
Puerto Rico, *et al.*

  Demandados-Recurridos

CC-2003-964


Opinión Disidente del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une el Juez Presidente señor Hernández Denton


San Juan, Puerto Rico, a 6 de diciembre de 2005

En el día de hoy, una Mayoría de este Tribunal se niega a revisar la Sentencia que dictara en el caso de epígrafe el pasado 30 de junio de 2005. En dicha Sentencia, el Tribunal concluyó que el cierre de la planta de manufactura de la compañía Baxter Healthcare Corp. of Puerto Rico, Inc., ("Baxter") sita en Carolina en diciembre de 1998, no fue un verdadero cierre a tenor con lo dispuesto en el Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada ("Ley 80"), 29 L.P.R.A. secs. 185(b).[1] De

_____

[1] El Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185(b)(d) dispone en lo pertinente:

      Se entenderá por justa causa para el despido de un empleado de un establecimiento:

la Sentencia dictada se colige que el Tribunal estima que dicho "cierre" fue más que nada un subterfugio para transferir las operaciones de Carolina a las plantas operadas por Baxter en Jayuya y en Aibonito, por lo que la cesantía de los demandantes, empleados que laboraban en Carolina, fue injustificada en violación a la Ley 80. El Tribunal dispuso en su Sentencia que para que un cierre constituya justa causa para el despido de empleados, el patrono que efectúa el mismo tiene que descontinuar de forma absoluta las operaciones del negocio cerrado; en este caso el Tribunal estimó que ello no ocurrió.

Disiento por estimar que la determinación del Tribunal es contraria a Derecho y no se sostiene a base del récord que consta ante nosotros. Debemos además expresar que produce inquietud las potenciales repercusiones negativas que la decisión de este Tribunal pueda tener sobre el desarrollo industrial de Puerto Rico. Después de todo, el efecto real de la Sentencia del Tribunal, es catalogar como causa injustificada para la cesantía de empleados, aquella determinación de negocios dirigida a mantener a una compañía competitiva en un mercado globalizado que conlleve la consolidación de operaciones. La Ley 80 le reconoce a un patrono el derecho a despedir a sus empleados si la razón no es arbitraria; ello, "se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base

_____

. . .
    (d) Cierre total o temporero o parcial de las operaciones del establecimiento.

de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial." *Díaz Fontánez v. Wyndham Hotel Corp.*, res. 24 de octubre de 2001, 155 D.P.R. ___, 2001 TSPR 141.

Son varias las razones que abonan a la decisión de disentir, **todas ellas sustentadas por evidencia incontrovertible que consta en autos y obviadas en la Sentencia dictada.**

**Primero**, en la planta operada por Baxter en Carolina **se elaboraban varios productos**, a saber: soluciones intravenosas tanto salinas como dextrosas ("IV Solutions"); las bolsas estériles utilizadas para el "IV Solution"; "galaxy", una premezcla de drogas y llenado estéril; tubos plásticos, unos para uso intravenoso y otros para uso renal; y, los productos renales conocidos como "Continuous Ambulatory Periodonal Dyalisis" ("CPD") y el Transureteral Irrigation ("TUR").[2] **Segundo,** la planta que operaba Baxter en Carolina en efecto cerró operaciones en diciembre de 1998. Este proceso comenzó paulatinamente en diciembre de 1995 culminando en el 1998. Como cuestión de hecho, el lugar donde ubicaba la planta de Baxter, hoy en día ubican entidades gubernamentales y privadas. **Tercero**, el cierre de dicha planta fue el resultado de una evaluación que llevó a cabo la compañía de sus operaciones mundialmente en el año 1993, con miras a mejorar su competitividad. Este

---

[2] En la sentencia dictada no se hace referencia a todos los productos que se elaboran en la fábrica de Carolina.

análisis reveló que los costes de conversión[3] para operar las plantas de Baxter en Carolina y Culebra eran de los más altos, al compararlos con otras plantas operadas por Baxter en otros países y en Puerto Rico.

**Cuarto,** como resultado de ese análisis la compañía tomó la decisión de negocios de consolidar parte de la operación de manufactura que se efectuaba en Carolina con otras plantas sitas en Puerto Rico y los Estados Unidos, cerrar facilidades aquí en Puerto Rico y, descontinuar la producción de algunos productos. Los planes de la compañía se anunciaron en octubre de 1995. **Quinto, para implementar la determinación corporativa Baxter vendió su operación en Culebra, cerró el almacén que operaba en Sabana Gardens, Carolina, cerró paulatinamente la planta de manufactura sita en Carolina, trasladó parte de las operaciones de Carolina a plantas de Baxter en Illinois (producción de la premezcla de drogas y llenado estéril conocido como "galaxy"), en Carolina del Norte (producción de los productos renales "CAPD" y "TUR"), en Jayuya (elaboración de bolsas de soluciones intravenosas —salinas y dextrosas— así como los tubos que forman parte integral de las bolsas), y en Aibonito, donde transfirió la manufactura de bolsas estériles las cuales pasaban luego a Jayuya para ser llenadas con las soluciones que allí se producían. Finalmente, Baxter descontinuó la producción de los tubos**

---

[3] Los costes de conversión se computaban tomando en consideración la cantidad de dinero invertida en una planta frente al ingreso que se devenga de la operación de esa misma planta, además de considerar los costos de personal.

**renales que hasta entonces producía en Carolina.**[4]    **Sexto, los demandantes** a través de su representación legal, **aceptaron que en efecto el cierre de las operaciones en Carolina obedeció a una determinación de negocios de la compañía para reducir costos, consolidar operaciones y hacer de la compañía una más competitiva.**[5]  **Séptimo, todos los empleados cesanteados por Baxter, incluyendo los demandantes, recibieron ya una compensación voluntaria de parte del patrono que ascendió a más de ocho millones de dólares ($8,000,000.00);** además de que les retuvo su plan médico por seis meses.   Cada empleado recibió como compensación un mes de sueldo, una semana por cada año de servicio más el 10% de esa suma.[6]

Al sopesar los factores antes mencionados es precedente concluir que en efecto Baxter cerró sus operaciones en Carolina como resultado de una legítima decisión de negocios, por lo que la cesantía de los empleados que laboraban en la planta de Carolina no constituyó un despido injustificado.  Somos del criterio que no se justifica la conclusión del Tribunal de que lo

---

[4] Sorprendentemente, la Sentencia dictada por el Tribunal **no hace referencia alguna** al cierre del almacén en Carolina, la venta de las operaciones Baxter en Culebra, el traslado de la producción de varios productos a Carolina del Norte e Illinois, ni a que se descontinuó la producción de tubos renales; creando así la errónea impresión de que en la planta de Carolina solamente se producían los productos cuya producción se trasladó a Jayuya y Aibonito.   Al obviarse esta información, la Sentencia no logra apurar adecuadamente en qué consistió el cierre de operaciones.

[5] Este hecho tampoco se mencionó en la Sentencia.

[6] El hecho de que Baxter pagase la compensación antes mencionada no se consideró, pues no se mencionó, en la Sentencia dictada por el Tribunal.

que ocurrió fue un traslado de operaciones en lugar de un cierre de operaciones. No podemos por lo tanto avalar con nuestro voto una decisión a todas luces errónea, pues es justa causa para el despido aquella vinculada a la ordenada marcha y normal funcionamiento de una empresa. *Díaz Fontánez, ante.*

Somos del criterio que la conclusión del Tribunal de que en este caso no hubo un verdadero cierre de operaciones sino meramente un traslado de las operaciones de Baxter de Carolina a Jayuya y Aibonito, no se ajusta a los hechos incontrovertidos de este caso según se desprenden del voluminoso expediente del caso. Refleja además, una incorrecta apreciación de cómo operan las fábricas de manufactura en Puerto Rico; así como también, coarta el radio de acción disponible a las compañías multinacionales que operan en Puerto Rico que se vean obligadas a consolidar sus operaciones para poder competir en el mercado internacional. Ello, a nuestro juicio, perjudica la fuerza trabajadora puertorriqueña a largo plazo. Con su decisión el Tribunal en realidad, penaliza a Baxter por haber trasladado parte de las operaciones de Carolina a otras plantas en Puerto Rico.

El principal error del Tribunal y del cual fluye su conclusión, estriba en no haber sopesado **todas las medidas que tomó Baxter en relación con sus operaciones en Puerto Rico** luego del análisis de costo/beneficio que ésta efectuó sobre sus operaciones a nivel mundial. Al obviar la totalidad de los factores antes mencionados, y repito: la

venta de la operación en Culebra, el cierre del almacén en Carolina, el cese de la producción de tubos renales, y el traslado de parte de las operaciones de Carolina a plantas en Illinois y Carolina del Norte --además de Jayuya y Aibonito--, el Tribunal no logra apurar adecuadamente el alcance de la consolidación de las operaciones de Baxter en Puerto Rico y en qué consistió el cierre de la fábrica de Carolina.

Al centrar su discusión exclusivamente en el traslado de la producción de bolsas de soluciones intravenosas y sus tubos a las plantas de Jayuya y Aibonito, la Sentencia dictada por este Tribunal **crea la errónea impresión de que esos eran los únicos productos que se manufacturaban en Carolina**; y, consiguientemente, que la llamada consolidación de operaciones consistió solamente en transferir dicha operación a Jayuaya y Aibonito, sin más. Lo que hace más viable una conclusión en el sentido de que no hubo un verdadero cierre sino que meramente un traslado de lo que se hacía en Carolina a otros dos pueblos de la Isla, en perjuicio de los empleados que laboraban en la planta de Carolina.

Lo cierto es que la producción de bolsas de soluciones intravenosas y sus tubos, como vimos, **era solamente uno de los productos que se manufacturaban en la planta Carolina,** los otros productos se trasladaron a plantas a Estados Unidos o se descontinuó su producción, precisamente porque se cerraba la planta de Carolina como resultado de una decisión corporativa para maximizar su competitividad. De

ahí la importancia de enfrentarse al cuadro completo de los eventos que conllevó el proceso de consolidación de las operaciones de Baxter en Puerto Rico para mejorar su competitividad. El no hacerlo, le impide al Tribunal justipreciar adecuadamente la decisión de negocios que tomó la compañía y cómo con ésta se pretendió reducir costos consolidando operaciones.

En esencia, lo que hace el Tribunal en su Sentencia es penalizar a Baxter por haber optado en transferir una parte de su operación a otras plantas aquí en Puerto Rico, en vez de transferirla a Estados Unidos. Esto último presumiblemente, y ateniéndonos a la lógica del Tribunal, no la hubiese expuesto a una reclamación de que la compañía violentaba la Ley 80. No podemos suscribir este resultado.

Por otro lado, el Tribunal estima que para que se dé en efecto un cierre conforme lo dispuesto en la Ley 80 que pueda constituir justa causa para la cesantía de empleados, se requiere "que el patrono **descontinúe de una forma absoluta las operaciones del negocio.**" (Énfasis en original.) Sentencia, pág. 21. Esta interpretación es resultado de un análisis de miras cortas pues no tomó en cuenta en su completa dimensión las medidas tomadas por Baxter en Puerto Rico.

Además, estimamos que de la Sentencia dictada por el Tribunal no queda claro a qué se refiere la Mayoría cuando indica que para que ocurra un cierre en el contexto de la Ley 80, hay que descontinuar "de una forma absoluta las operaciones del negocio." A qué operaciones de negocio se

refiere el Tribunal; por ejemplo, se refiere el Tribunal a las de Baxter como compañía multinacional sita en Puerto Rico que tiene negocios en la Isla.  O por el contrario, negocio es la operación y producción de un producto dentro de una misma fábrica operada por Baxter o cualquier compañía que se encuentre en igual situación.  Si el Tribunal se refiere a lo último, ¿quiere ello decir que "el cierre" sólo ocurre si se deja de producir o descontinuar totalmente el producto en Puerto Rico?  Lo resuelto en el caso de epígrafe apunta a que la respuesta del Tribunal es en la afirmativa.  No parece, sin embargo, que ello fuera lo que se contempló en la Ley 80.

La interpretación adoptada por la Mayoría de este Tribunal tiene el efecto real de hacer del Artículo 2 de la Ley 80, 29 L.P.R.A. sec. 185(b), que reconoce como justa causa para el despido de un empleado el cierre total, parcial o temporero de un establecimiento, letra muerta. Esta interpretación además, arroja un velo de incertidumbre sobre las medidas que puede tomar una compañía para afrontar los retos de una economía cada vez más globalizada y competitiva. **En efecto, en este caso el Tribunal ha dispuesto mediante *fiat* judicial que no es justa causa para el cierre de un establecimiento, aquel cierre predicado en la necesidad de consolidar operaciones para reducir gastos y poder mantener su competitividad en una economía predicada en la globalización.**

Finalmente, no podemos concluir sin expresar que es insostenible imponerle a Baxter el pago de la mesada que

contempla la Ley 80 a los demandantes, **sin considerar el pago voluntario que ya ésta efectuó cuando éstos fueron cesanteados**. Si el pago de la mesada es la única indemnización a que tiene derecho un empleado que ha sido despedido injustificadamente, cómo se puede justificar un pago que supondrá, realmente, una segunda mesada. A lo sumo, este Tribunal debió haber ordenado al Tribunal de Primera Instancia auscultar la naturaleza y la cuantía del pago recibido por los demandantes para determinar si procede acreditar el mismo a la mesada que ordena la Ley 80. Así, si el monto de la mesada asciende a una cantidad igual o mayor a la ya recibida por el empleado de Baxter, la compañía no viene obligada a efectuar un pago adicional. Si por el contrario, el monto de la mesada que contempla la Ley 80 es mayor al pago recibido, sólo procederá abonar la diferencia. De lo contrario, la decisión del Tribunal se revela de carácter punitivo lo que a nuestro juicio no se justifica.

Por las razones antes mencionadas disiento de la decisión que ha tomado una Mayoría de los miembros de este Tribunal en el caso de epígrafe, rehusando reconsiderar su dictamen. Reconsideraría y desestimaría la demanda instada en este caso.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mildred Vélez Cortés, et al.

   Demandantes-Peticionarios

         v.

                  CC-2003-964

Baxter Healthcare Corp. of
Puerto Rico, et al.

   Demandados-Recurridos

VOTO PARTICULAR DE CONFORMIDAD EMITIDO, EN ETAPA DE RECONSIDERACIÓN, POR EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ.

San Juan, Puerto Rico, a 6 de diciembre de 2005.

En la Opinión Disidente del caso de epígrafe, la Jueza Asociada señora Rodríguez Rodríguez señala que los motivos que la inspiraron a circular su ponencia están sostenidos por evidencia incontrovertible, la cual consta en autos y fue obviada por el Tribunal en su sentencia. No compartimos su criterio. Aclaramos nuestro voto.

La Jueza Asociada señora Rodríguez Rodríguez señala varios asuntos que supuestamente no tomó en consideración el Tribunal al dictar la

referida sentencia. Disiente de la determinación del Tribunal de que no hubo un cierre de operaciones de la planta de Baxter en Carolina sino un traslado de las mismas a las plantas de Baxter en Jayuya y Aibonito. Señala que surge del expediente de autos que lo que se trasladó de la planta de Baxter de Carolina a otras plantas de la compañía en Puerto Rico fue sólo parte de los productos que se fabricaban y que el resto se trasladó a Estados Unidos. Si bien es cierto que surge del expediente que la operación de algunos productos se trasladó a plantas de Baxter en Estados Unidos y no dentro de Puerto Rico, **el Tribunal de Primera Instancia, luego de apreciar toda la prueba que le fue presentada, determinó que la producción de la compañía de Carolina se trasladó casi completamente a las plantas de Aibonito y Jayuya.**[7]

Tal como señalamos en la Sentencia dictada, el Tribunal de Primera Instancia dictaminó correctamente que los demandantes sí tenían derecho, bajo las disposiciones de la Ley 80, *supra*, a ser compensados con la debida indemnización. Ese Tribunal determinó, como cuestión de hecho, lo siguiente:

> ...los documentos y declaraciones de la propia parte demandada, a través de múltiples informes corporativos, memorandos, cartas y la deposición de Aracelis Centeno, oficial de Baxter-PR y anterior Directora de Personal de la Planta de Carolina, hacen inevitable la conclusión de que sobre los hechos medulares en torno las actuaciones de la demandada a la luz de la Ley 80, no hay controversia. Los hechos

---
[7] Apéndice del Recurso de Certiorari, págs. 1406-1407.

materiales que no están en controversia establecen: (1)la unidad de operaciones de las distintas plantas de Baxter en Puerto Rico, particularmente entre las plantas de Carolina, Aibonito y Jayuya ("I.V. Systems") y particularmente en cuanto al manejo de sus recursos humanos; (2)que la planta de Carolina era la más antigua de Baxter en Puerto Rico y que los demandantes eran, en su mayoría, los más antiguos de la empresa; (3) **que la producción en la cual laboraban los demandantes no se suspendió, sino que se trasladó casi completamente a las plantas de Baxter en Aibonito y Jayuya;** y (4) que a los demandantes, no se les ofreció traslados a sus puestos en las plantas de Baxter de Aibonito y Jayuya, sino que la empresa reclutó nuevo personal para realizar las tareas que éstos antes realizaban (Énfasis suplido).[8]

La prueba considerada por el foro primario y por este Foro incluye, tal y como expresó, el Tribunal en su Sentencia, un boletín informativo de Baxter del 19 de octubre de 1995, mediante el cual anunció el alegado cierre de operaciones de la planta de Carolina. En éste se expresó, en lo pertinente, lo siguiente:

[...]
As part of the consolidation announced today, **the company will transfer most of the production from its IV-solutions plant in Carolina, Puerto Rico, to another Baxter facility in Jayuya, which will be expanded to accommodate the move.** About 750 employees work at the Carolina plant, which will be phased down and closed by the end of 1997 or early in 1998.
[...] (Énfasis suplido).[9]

---

[8] Íd.

[9] Apéndice del Recurso de Certiorari, pág. 274; También véase: Apéndice, pág. 688, Lida Estela Ruaño, "Baxter Expands in Jayuya", en: Caribbean Business, 16 de julio de 1998. Este último artículo lee, en lo pertinente, de la forma siguiente: "[Eladio] Alvarez [Baxter General Manager] said: About 90% of production from Baxter´s recently closed

Al evaluar la evidencia desfilada ante si, el Tribunal de Primera Instancia realizó sus determinaciones de hechos. Examinamos la prueba que consta en nuestro expediente, junto con las determinaciones de hechos del foro primario y concluimos que su dictamen fue correcto. No podemos intervenir con la evaluación y determinaciones de hechos que de toda la prueba presentada hizo el foro primario. Es norma reiterada que le debemos deferencia a la apreciación de la evidencia que realiza el Tribunal de Primera Instancia en ausencia de pasión, perjuicio, parcialidad o error manifiesto en la apreciación de la prueba.[10] Ninguna de esas circunstancias está presente, de manera que nos permita intervenir con las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. A base de ello, resolvimos que no hubo un cierre de las operaciones que estuvieron ubicadas en la planta de Baxter de Carolina sino un traslado de la <u>mayor parte de esas operaciones</u> a las plantas de Jayuya y Aibonito. Por lo cual, concluimos que el despido de los peticionarios fue uno injustificado por ser los empleados de mayor antigüedad de Baxter, que realiza negocios en Puerto Rico con unidad de operaciones entre sus plantas, respecto a sus recursos humanos.

_____

plant in Carolina was relocated to Jayuya. The rest was sent to other Baxter plants throughout the island, including Aibonito."

[10] <u>Álvarez de Choudens et al. v. Rivera</u>, 2005 T.S.P.R. 85, 2005 J.T.S. 90. 165 D.P.R.___ (2005); <u>Rodríguez v. Pérez</u>, 2005 T.S.P.R. 36, 2005 J.T.S.41, 164 D.P.R.___ (2005).

La Opinión Disidente de la Jueza Asociada señora Rodríguez Rodríguez expresa que sorprendentemente no hicimos referencia en la Sentencia "al cierre del almacén en Sabana Gardens en Carolina y a la venta de las operaciones Baxter en Culebra". Estos datos sí surgen de nuestro expediente, mas no hicimos hincapié en ellos porque entendíamos que aunque fuesen parte de una estrategia de negocios para reducir gastos, no justifican el despido de los empleados de la planta de Carolina, que eran los más antiguos en la empresa, ni provee dato alguno que altere la determinación que este Tribunal entendió como correcta a los efectos que se trataba de un traslado de operaciones de la planta de Baxter de Carolina a otras dentro de Puerto Rico. Es necesario puntualizar que el Tribunal de Primera Instancia determinó, como cuestión de hecho, que existía unidad de operaciones de las distintas plantas Baxter de Puerto Rico, particularmente en cuanto al manejo de sus recursos humanos.[11]

En la referida Opinión se hace referencia a un pago voluntario que supuestamente Baxter entregó a todos los empleados cesanteados en carácter de una compensación voluntaria.[12] Señala que debimos ordenar al Tribunal de Primera Instancia auscultar la naturaleza y cuantía de este

---

[11] Apéndice del Recurso de <u>Certiorari</u>, pág. 1406.

[12] Íd., págs. 283, 303. Baxter anuncia la aprobación de este pago a los empleados cesanteados mediante varios de sus boletines oficiales. En síntesis, alegaba, respecto a este pago, que era uno voluntario pues Baxter no estaba obligado por ley a indemnizar a sus empleados.

pago para determinar si procede acreditar el mismo como mesada.

Respecto a la mencionada compensación voluntaria, debemos señalar que la misma no es una mesada sino una compensación que la compañía Baxter, como parte de su política interna, puede conceder. No obstante, esta compensación voluntaria concedida no releva a Baxter, como patrono, de cumplir con la indemnización que la ley exige se conceda en casos de despidos injustificados. Esta compensación, en caso de que los peticionarios la hayan aceptado, no sustituye la mesada correspondiente. El Tribunal de Primera Instancia desestimó la acción de varios demandantes por haber éstos otorgado con Baxter un acuerdo y relevo general.[13] No surge de nuestro expediente que los peticionarios hayan otorgado con Baxter tal acuerdo.

Efraín E. Rivera Pérez
Juez Asociado

---

[13] Íd., pág. 135, 1458. Véase también los acuerdos de relevo que constan en el expediente, Apéndice, págs. 72-90, 755, 762, 774, 782.